# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ISIAH FOSKEY,

    Appellant,

    v.

PLUS PROPERTIES, LLC,

and

DISTRICT OF COLUMBIA,

    Appellees.

Civil Action No. 09-2280 (CKK)

## MEMORANDUM OPINION
(September 29, 2010)

    Presently before the Court is an appeal from a ruling by the United States Bankruptcy Court for the District of Columbia that certain postpetition acts taken by Appellees Plus Properties, LLC ("Plus Properties"), and the District of Columbia (the "District"), were not in violation of the automatic stay pursuant to 11 U.S.C. § 362(a). At issue is a question of first impression in this Circuit: whether the automatic stay is violated when postpetition steps are taken to secure and record a deed for property purchased through a prepetition tax foreclosure sale and for which the debtor's right of redemption has been foreclosed pursuant to a prepetition final judgment. Based on a searching review of the filings before the Court on appeal, the relevant statutes, regulations, and case law, and the record as a whole, the Court concludes that the postpetition actions at issue did not violate the automatic stay. The Court therefore affirms the Bankruptcy Court's ruling for the reasons that set forth below.

# I. BACKGROUND

This appeal arises from the sale of certain real property owned by Appellant Foskey at the District's annual tax sale in July 2002. In particular, the parties' arguments on appeal focus on Appellees' postpetition conduct in completing payment and executing, delivering, and recording a deed for the subject property. To understand the parties' present positions, it is useful to first review the District's laws governing the sale of real property via a tax foreclosure sale. The Court therefore begins its discussion with a brief review of the relevant statutory provisions governing the sale of property at tax sales in the District and the various legal protections afforded owners of such property before then turning to consider the factual and procedural background underlying the present appeal.

## A.    *Statutory Background*

The Mayor of the District of Columbia is authorized, after complying with various statutory requirements, to sell all real property in the District on which the tax is in arrears. *See* D.C. Code § 47-1332.[1] District law provides, however, that the prevailing purchaser of property at a tax sale does not immediately gain title. Rather, the owner of property sold by the District at a tax sale retains the right to redeem the real property "at any time until the foreclosure of the right of redemption is final." *Id.* § 47-1360.[2] There is a mandatory "6-month waiting

---

[1] Foskey does not challenge the validity of the tax sale at issue nor dispute that the sale of the subject property to Plus Properties was done in full compliance with the District's statutory requirements. *See generally* Appellant's Br. Accordingly, the Court does not discuss herein the specific statutory provisions with which the Mayor must comply in order to legally auction properties for which the tax is in arrears. *See* D.C. Code §§ 47-1360 *et seq.*

[2] To redeem property sold at a tax sale, an individual must pay to the District, *inter alia*, "the amount paid by the purchaser for the real property exclusive of surplus, with interest thereon" as well as any taxes associated with the property or paid by the purchaser and any

period" imposed following the date of the tax sale, within which the purchaser of the property may not move to foreclose the owner's right of redemption and the owner remains free to exercise his right of redemption. *See id.* § 47-1370(a). Only after the 6-month waiting period has expired may the purchaser then file suit in the Superior Court of the District of Columbia to foreclose the owner's right of redemption. *Id.* An owner's right of redemption continues until the D.C. Superior Court has issued a judgment foreclosing the right of redemption and such judgment has become final. *Id.* § 47-1370(d). By statute, a judgment issued by the D.C. Superior Court foreclosing an owner's right of redemption is deemed "final and conclusive on the defendants, their heirs, devisees, and personal representatives and they, or any of their heirs, devisees, executors, administrators, assigns, or successors in right, title, or interest, shall be bound by the judgment as if they had been named in the action and personally served with process." *Id.* § 47-1368. The judgment may not be reopened "except on the grounds of lack of jurisdiction or fraud in the conduct of the action to foreclose." *Id.* § 47-1379.

While the judgment foreclosing the owner's right to redemption ends their equitable interest in the property, legal title to the subject property does not vest in the tax sale purchaser by operation of the final judgment alone. Rather, by statute, a final judgment foreclosing the right of redemption must "direct the Mayor to execute and deliver a deed to the purchaser in fee simple on payment to the Mayor of the amount" required under the relevant statutes. *See id.* § 47-1382(a). "No deed shall be executed before such payment is received. " *Id.* The final judgment must also "direct the Mayor to enroll the purchaser in fee simple as the owner of the real property." *Id.*

---

expenses owed to the purchaser as a result of the tax-sale purchase. *See* D.C. Code § 47-1361(a).

Accordingly, until the deed is transferred pursuant to the procedure outlined in D.C. Code § 47-1382(a), the original owner of the property continues to hold legal title to the property, but no longer has the right to redeem the property at their option.

Although D.C. Code § 47-1382(a) does not specify a particular time period within which the purchaser must complete payment to the District and record the deed once it is executed and delivered by the District, the statute does separately provide that failure to take either action in a timely manner may risk opening the final judgment to attack. Specifically, D.C. Code § 47-1382(f) provides that if the purchaser fails to pay to the Mayor the amount required within 30 days of the final judgment or if the purchaser does not record the deed in the Recorder of Deeds within 30 days of the execution of the deed, "the final judgment may be vacated as void by the Superior Court on the motion of any party." *Id.* § 47-1832(f).

### B.    *Factual Background*

#### 1.    Prepetition Events

The relevant facts underlying this bankruptcy appeal are undisputed. Appellant, Isiah Foskey, and his wife owned real property located at 3115 E Street. S.E., Washington, D.C. Appellant's Br. at 2; Appellee District of Columbia's Br. at 1. Foskey failed to pay the real property taxes on the subject property, and the property was sold to Appellee, Plus Properties, at the District's annual tax in July of 2002. Appellant's Br. at 2; Appellee District of Columbia's Br. at 1. Pursuant to District law, a mandatory 6-month waiting period followed Plus Properties' purchase of the subject property. Foskey did not exercise his right of redemption during that time, and Plus Properties subsequently filed suit in the District of Columbia Superior Court to foreclose Foskey's right of redemption. Appellant's Br. at 2; Appellee District of Columbia's Br. at 1; *see*

*also Plus Properties, LLC v. Foskey et al.,* 2003 CA 001869(RP). Despite being timely and properly served, Foskey failed to file an answer or otherwise respond to the suit. On July 20, 2005, Magistrate Judge Evelyn Coburn issued a Final Judgment and Final Order foreclosing Foskey's rights of redemption. Docket No. [1-4] at 21-25 (07/20/05 D.C. Superior Court J. and Order) (ordering that "any and all persons who have or claim to have any right, title, claim, lien, interest or equity of redemption in the Property are hereby extinguished"). As required, the final judgment directed the Mayor "to execute and deliver a deed to [Plus Properties] in accordance with D.C. Code § 47-1382." *Id.* at 21.

On August 30, 2005, Foskey filed a Motion for Reconsideration, which Magistrate Judge Coburn denied on August 30, 2005. Appellee District of Columbia's Br., Ex. A (01/06/10 D.C. Ct. of Appeals Mem. Op. and J.) at 1. Thereafter, on September 13, 2005, Foskey filed a Motion for Clarification and Reconsideration of Magistrate Judge Coburn's August 30 order denying his initial motion for reconsideration. *Id.* at 2. Before Magistrate Judge Coburn could rule on that latter motion, Foskey filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Columbia on September 20, 2005, thereby imposing an automatic stay. Appellant's Br. at 3; Appellee District of Columbia's at Br. 1-2. The record indicates that Foskey failed to advise Magistrate Judge Coburn that he had filed the bankruptcy petition, and on November 16, 2005, apparently unaware of the Bankruptcy Court action, Magistrate Judge Coburn denied Foskey's Motion for Clarification and Reconsideration on November 16, 2005. Appellee District of Columbia's Br., Ex. A (01/06/10 D.C. Ct. of Appeals Mem. Op. and J.) at 2. At no time did Foskey move the D.C. Superior Court to stay the July 20, 2005 final judgment foreclosing his right of redemption.

2.    Postpetition Events

a.    Execution, delivery, and recordation of the tax deed.

On January 25, 2006, after the filing of Foskey's bankruptcy petition on September 20, 2005, the Mayor executed and delivered the subject property's deed to Plus Properties in compliance with the final judgment and order issued by Magistrate Judge Coburn. Appellee District of Columbia's Br. at 2. Plus Properties subsequently recorded the deed at the Recorder of Deeds on March 3, 2006. Appellee District of Columbia's Br. at 2.

b.    The Bankruptcy Court's June 12, 2007 Order.

On April 18, 2007, Plus Properties filed a Motion for Relief from the Automatic Stay Nunc Pro Tunc. *See* Docket No. [1-4] at 18-20 (Mot. for Relief from the Automatic Stay). In light of the postpetition actions taken by Plus Properties and the District to secure and record the deed to the subject property, Plus Properties moved the Bankruptcy Court to lift the automatic stay *nunc pro tunc* from September 20, 2005, to permit the recordation of the deed, or, alternatively, to rule that the automatic stay had not been violated in the first instance as the property at issue was not subject to the stay. *See id*. In response, on April 24, 2007, Foskey filed an Emergency Motion to Sell Property Free and Clear of Liens. Docket No. [1-4] at 40-44 (Emer. Mot. to Sell Property). As set forth therein, Foskey alleged that the postpetition actions taken by Plus Properties and the District did in fact violate the automatic stay and Plus Properties' deed to the property should therefore be deemed void; accordingly, Foskey argued that he remained the rightful owner of the subject proper and sought permission from the Bankruptcy Court to sell the property free and clear of any liens. *Id.*

The Bankruptcy Court held a hearing on both motions on May 24, 2007, and issued an Order on June 12, 2007, denying as moot Plus Properties' Motion for Relief from Stay Nunc Pro Tunc and denying Debtor's Motion for Authority to Sell Property Free and Clear of Liens. Docket No. [1-4] at 121-23. The Bankruptcy Court found that the automatic stay had not been violated by Plus Properties or the District because Foskey's right of redemption had been finally foreclosed prior to the filing of Foskey's bankruptcy petition and the automatic stay provisions therefore did not apply to the postpetition actions to secure the deed. *Id.* Plus Properties' deed to the property was therefore valid, and Foskey had no legal or equitable ownership rights in the property.

The Bankruptcy Court further found that Magistrate Judge Coburn's November 16, 2005 Order denying Foskey's Motion for Clarification and Reconsideration had been issued in violation of the automatic stay provisions. *Id.* Pursuant to the parties' agreement, the Bankruptcy Court ordered the automatic stay lifted to allow Magistrate Judge Coburn's order to be deemed filed as of the June 12, 2007 date, and to permit the parties to "pursue such rights as they may have in the D.C. Superior Court litigation." *Id.*

c. The Bankruptcy Court's October 16, 2009 Order.

On June 22, 2007, Foskey filed a motion for reconsideration of the Bankruptcy Court's June 12, 2007 Order. Docket No. [1-4] at 137-44. The motion was granted insofar as it sought permission to present new evidence and argument as to the appropriateness of the June 12, 2007 Order. Docket No. [1-4] at 365-66 (Oct. 16, 2009 Order). A hearing was held by the Bankruptcy Court on April 21, 2008, and the Bankruptcy Court issued an Order and Memorandum Decision on October 19, 2009, affirming its prior June 12, 2007 Order. *Id.* The Bankruptcy Court found that Plus Properties did not violate the automatic stay by rendering payment to secure a deed to the

7

property at issue.  *Id.*  It further found that the District had not violated the stay by executing or delivering, nor had Plus Properties violated the stay by recording the deed.  *Id.*  The Bankruptcy Court therefore affirmed its June 12, 2007 Order, denying as moot Plus Properties' Motion for Relief from Stay Nunc Pro Tunc and denying Debtor's Motion for Authority to Sell Property Free and Clear of Liens, on the basis that the automatic stay had not been violated and Foskey no longer had any legal right to the property at issue.  *Id.* at 2

The Bankruptcy Court's reasoning in support of this order is contained in an accompanying Memorandum Decision.  *In re Foskey*, 417 B.R. 836 (Bankr. D.D.C. 2009).  The Bankruptcy Court explained that "[w]hether the automatic stay was violated is dependent upon what interest in the property, if any, was held by the estate."  *Id.* at 838.  The estate's interest in the property in turn is "dependent upon what property interest Foskey possessed, under the D.C. Code, when he filed for bankruptcy" because the bankruptcy estate "cannot possess greater rights or interest in the property than those held by the debtor upon filing, the bankruptcy estate possesses only that limited bundle of post-sale rights."  *Id.* at 838-39, 841.  After a thorough analysis of the District's statutory provisions governing the tax sale and foreclosure process, the Bankruptcy Court found that Foskey's interest, and thus the estate's interest, in the property upon his filing of bankruptcy "was subject to Plus Properties' right, under the Superior Court's final judgment, to deposit payment towards its purchase of the property, and to have the District convey the legal title to it."  *Id.* at 841.

Having defined the estate's interest in the property, the Bankruptcy Court then considered "whether the postpetition acts of Plus Properties and the District directed against the real property were acts against property of the estate."  *Id.* at 839.  The Bankruptcy Court answered this question

in the negative, finding that

> the deed here did not impair title to property of the estate. Although [Foskey] may [have] retain[ed] some incidents of ownership after entry prepetition of [the] District of Columbia tax sale judgment (for example, a limited right of possession), the delivery of the deed does not impair any of [Foskey]'s rights as [his] previous full ownership of the property had been converted by the judgment to a right of enjoyment subject to divestment by way of the purchaser's exercising its rights under its purchase commitment.

*Id.* at 843. In other words, "[b]ecause Mr. Foskey's interest in the property was subject to Plus Properties' right of payment and because the subsequent transfer and recordation of the tax deed had no effect on the interest Mr. Foskey retained after the foreclosure of his right of redemption, the postpetition acts of the District and Plus Properties were not in violation of the stay." *Id.* at 844.

The Bankruptcy Court further found that the postpetition acts at issue did not violate the bar of 11 U.S.C. § 362(a)(6) against collection of a prepetition debt. *Id.* at 843. The Bankruptcy Court reasoned that it was Plus Properties' "right to complete its tax sale contract of purchase," and the District issued "the deed [in] compliance with the obligation to issue a deed if payment were made." *Id.* Therefore, in contrast to the prepetition tax sale and the D.C. Superior Court proceedings, neither of these postpetitions acts was an act to collect prepetition debt. *Id.*[3]

Finally, the Bankruptcy Court rejected Foskey's claim that he had a continuing property interest even after the deed was issued because there was a possibility under D.C. Code § 47-

---

[3] Foskey incorrectly contends that the Bankruptcy Court also "agreed with Plus [Properties] and the District's position that the post petition acts performed by the District and Plus [Properties] were 'ministerial' and not affected by the preclusion of the stay." Appellant's Br. at 7. While the Bankruptcy Court acknowledged this argument by Plus Properties and the District, the Bankruptcy Court expressed concerns regarding the proper applicability of that doctrine to the facts at hand and therefore explicitly declined "to decide this case based on the 'ministerial act' doctrine." *In re Foskey*, 417 B.R. at 842.

1382(f) that his right of redemption may be restored. *Id.* at 843. As explained above, although the regulations do not specify a time within which the tax-sale deed must be executed, delivered, and recorded, section 47-1382(f) provides that if the purchaser fails to pay to the Mayor the amount required within 30 days of the final judgment, or if the purchaser does not then record the deed within 30 days of the execution of the deed, "the final judgment may be vacated as void by the Superior Court on the motion of any party." D.C. Code § 47-1832(f). In rejecting Foskey's reliance on this statutory provision, the Bankruptcy Court emphasized that Foskey's right of redemption may be restored under this provision only *if* (a) the purchaser failed to take the required actions within the established time frames, (b) Foskey then filed a motion to vacate in the D.C. Superior Court, and (c) the D.C. Superior Court granted the motion in its discretion. *Id.* at 843-44. Moreover, the court reiterated that because Foskey's interest in the property was, at the time of petition, subject to divestment by Plus Properties' payment and the District's issuance of title to Plus Properties, the District and Plus Properties had not taken any act against that interest in the property and the stay therefore was not violated. *Id.* at 844. The Bankruptcy Court further noted that the automatic stay had been and remained lifted so as to permit Foskey to pursue any rights he may have under section 47-1832(f) before the D.C. Superior Court of the District of Columbia. *Id.*

        d.        The D.C. Superior Court litigation.

In the wake of the Bankruptcy Court's June 12, 2007 Order lifting the automatic stay to permit the parties to pursue their rights in D.C. Superior Court, Foskey returned to D.C. Superior Court and filed a Motion for Judicial Review of the Magistrate Judge's November 16, 2005 Order

denying his Motion for Clarification and Reconsideration.[4] Appellee District of Columbia's Br., Ex. A (01/06/10 D.C. Ct. of Appeals Mem. Op. and J.) at 2; Appellee Plus Properties' Br. at 2. By order dated September 24, 2007, D.C. Superior Court Judge Joan Zeldon denied Foskey's motion as untimely. Appellee District of Columbia's Br., Ex. A (01/06/10 D.C. Ct. of Appeals Mem. Op.and J) at 2. Foskey subsequently moved for reconsideration of the September 24 decision, which was again denied by Judge Zeldon in an order dated November 2, 2007. *Id.* Foskey then appealed Judge Zeldon's decision to the D.C. Court of Appeals on December 5, 2007. *Id.* In a memorandum opinion dated January 6, 2010, the D.C. Court of Appeals affirmed the D.C. Superior Court's ruling that Foskey's Motion for Judicial Review of Magistrate Judge Coburn's order was untimely. *Id* at 2-3. Accordingly, Foskey has exhausted his avenues of appeal with respect to Magistrate Judge Coburn's final judgment foreclosing his right of redemption.

Separately, on April 15, 2008, Foskey filed a Motion to Vacate the final judgment foreclosing his right of redemption pursuant to D.C. Code § 47-1382(f), on the basis that Plus Properties and the District failed to comply with the time limits set forth therein. Appellant's Br. at 9. The public docket in the D.C. Superior Court litigation indicates that the Motion was denied on May 28, 2010. *See Plus Properties, LLC v. Foskey et al.,* 2003 CA 001869(RP). Foskey, acting *pro se*, filed a Motion for Review of that order on July 7, 2010, which the docket reflects currently remains pending. *Id.*

---

[4] As noted previously, the Bankruptcy Court found that Magistrate Judge Coburn's November 16, 2005 Order had been issued in violation of the automatic stay. Docket No. [1-4] at 122. The Bankruptcy Court's June 12, 2007 Order, however, "lift[ed] the Automatic Stay to allow that order to be deemed filed as of" June 12, 2007. *Id.*

*C.*     *Procedural History*

Foskey now seeks to appeal the Bankruptcy Court's October 19, 2009 Order, in which it upheld its June 12, 2007 Order finding that Plus Properties' and the District's postpetition actions did not violate the automatic stay; denied as moot Plus Properties' Motion for Relief from the Automatic Stay Nunc Pro Tunc; and denied Foskey's Motion to Sell Real Estate Free and Clear of All Liens. Foskey has filed an Appellant's Brief, *see* Docket No. [5], and Plus Properties and the District have each filed a separate Appellee's Brief, respectively Docket Nos. [10] & [11]. No further filings have been made, and the appeal is now ripe for review and resolution by the Court.

## II. LEGAL STANDARD

United States District Courts have jurisdiction over appeals of Bankruptcy Court decisions. *See* 28 U.S.C. § 158(a). Orders in bankruptcy cases may be immediately appealed as final orders if they dispose of discrete disputes within the larger case. *See In re St. Charles Preservation Investors, Ltd.*, 112 B.R. 469, 471 (D.D.C. 1990). On appeal from a bankruptcy court, a district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree, or remand with instruction for further proceedings. Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses." Fed. R. Bankr. P. 8013; *see also In re Johnson*, 236 B.R. 510, 518 (D.D.C. 1999). In contrast, a district court reviews questions of law de novo on appeal. *In re WPG, Inc.*, 282 B.R. 66, 68 (D.D.C. 2002) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

The burden of proof is on the party that seeks to reverse the bankruptcy court's holding, and that "party must show that the court's holding was clearly erroneous as to the assessment of

the facts . . . and not simply that another conclusion could have been reached." *Ford Johnson*, 236 B.R. at 518. In adversary proceedings, Federal Rule of Bankruptcy Procedure 7052 provides that the district court's review parallels review under Federal Rule of Civil Procedure 52(a). Thus, an appellate court applying the "clearly erroneous" standard is not entitled to "reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty . . . if it undertakes to duplicate the role of the lower court." *Anderson v. City of Bessemer, N.C.*, 470 U.S. 564, 573 (1985). As such, a finding of fact is clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ford Johnson*, 236 B.R. at 518 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

### III. DISCUSSION

A.  *The Bankruptcy Court Correctly Found That Plus Properties' And The District's Postpetition Actions Did Not Violate The Automatic Stay*

Foskey first argues that the Bankruptcy Court erred in ruling that Plus Properties' and the District's postpetition efforts to secure the deed pursuant to the prepetition tax sale and the D.C. Superior Court's final judgment did not violate the automatic stay. For the reasons set forth below, the Court finds that the Bankruptcy Court correctly held that neither Plus Properties' nor the District's postpetition acts violated the automatic stay provision in this case.

1.  Appellees' Postpetition Acts Were Consistent With and Did Not Impede the Estate's Limited Property Rights

Pursuant to 11 U.S.C. § 362(a), an automatic stay precludes, *inter alia*, "the enforcement against . . . property of the estate, of a judgment obtained before the commencement of the case,"

"any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," or "any act to collect, assess, or recover a [prepetition] claim against the debtor." 11 U.S.C. §§ 362(a)(2), (3), & (6). As the D.C. Circuit has explained, "[t]he automatic stay protects 'property of the estate.'" *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1471 (D.C. Cir. 1991). "This estate is created by the filing of a petition and comprises property of the debtor 'wherever located and by whomever held,' including (among other things) 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Id.* (quoting 11 U.S.C. § 541(a)(1)). The property of the estate thus consists of "[w]hatever rights a debtor has in property at the commencement of the case continue in bankruptcy — no more, no less." *Moody v. Amoco Oil. Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984); *see also In re Hope*, 231 B.R. 403, 412 (Bankr. D.D.C. 1999) ("to the extent that an interest in property is limited in the hands of the debtor, it is equally limited in the hands of the estate"). The rights of the debtor are generally determined by state law. *Butner v. United States*, 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law"). Accordingly, as the Bankruptcy Court properly concluded, "[w]hether the automatic stay was violated is dependent upon what interest in the property, if any, was held by the estate," which is in turn dependent upon "what property interest Foskey possessed, under the D.C. Code, when he filed for bankruptcy." *In re Foskey*, 417 B.R. at 838-39.

In this case, the property had been sold via a valid tax sale and Foskey's right of redemption had been foreclosed prepetition pursuant to the D.C. Superior Court's July 20, 2005

final judgment.[5]  Pursuant to the plain terms of that final judgment, Foskey's "right, title, claim, lien, interest or equity of redemption in the Property [were] extinguished" and the Mayor was directed to execute and deliver a deed to Plus Properties in accordance with D.C. Code § 47-1382. Docket No. [1-4] at 21.  Accordingly, at the time of the filing of his bankruptcy petition, Foskey had only bare legal title to the property, which interest was subject to divestment upon Plus Properties' performance of its purchase contract and the execution, issuance, and recordation of the deed.

Having established the contours of Foskey's, and therefore the estate's, legal and equitable interests in the property, the Court next turns to consider whether, in light of these interests, Plus Properties' and the District's actions completing payment and executing, delivering, and recording the deed postpetition, pursuant to a prepetition judgment terminating the debtor's right of redemption, violated the automatic stay.  As the Bankruptcy Court observed, this issue is one of first impression in the D.C. Circuit.  After carefully considering the parties' arguments, the relevant case law and statutory authority, and the record as a whole, the Court is persuaded that the

---

[5] The Court notes that there is no dispute that Magistrate Judge Coburn's July 20, 2005 Final Judgment foreclosing Foskey's rights of redemption was a final order in effect prior to the filing of Foskey's bankruptcy petition. *See* Appellant's Br. at 2 (agreeing that the D.C. Superior Court's July 20, 2005 decision "constituted its final Judgment and Order foreclosing Appellant's right of redemption").  Although, as previously explained, Foskey filed a Motion for Reconsideration of that Order on August 30, 2005, that motion was denied by Magistrate Judge Coburn prepetition on August 30, 2005.  Appellee District of Columbia's Br., Ex. A (01/06/10 D.C. Ct. of Appeals Mem. Op. and J.) at 1.  While Foskey subsequently filed a motion for clarification and to reconsider the August 30, 2005 order, which motion was not decided until after Foskey filed for bankruptcy, Foskey has not argued, nor does the Court find, that the filing of this successive motion for clarification affected the finality of Magistrate Judge Coburn's July 20, 2005 order. *See generally* Appellant's Br.  The D.C. Court of Appeals has since affirmed the D.C. Superior Court's ruling that Foskey's Motion for Judicial Review of Magistrate Judge Coburn's order was untimely, and Foskey has therefore exhausted his avenues of appeal with respect to Magistrate Judge Coburn's final judgment foreclosing Foskey's right of redemption.

Bankruptcy Court correctly found that the Appellees' postpetition actions did not violate the automatic stay provision because such actions had no affect on the debtor's property of the estate, as defined above.

At the time his petition for bankruptcy was filed, Foskey's right of redemption had been foreclosed by a final judgment and the property of the estate consisted solely of bare legal title to the property subject to divestment upon Plus Properties' payment of taxes and the District's issuance of a deed. Plus Properties' performance of its contract therefore did not affect Foskey's bankruptcy estate because the estate's interest in the property at issue was limited to bare legal title subject to divestment upon Plus Properties' payment of taxes. Nor did the District's conveyance of title to Plus Properties and the subsequent recordation of the deed violate the stay because such actions ultimately had no affect on the property of the estate. For this reason, the Court agrees with the Bankruptcy Court that:

> The deed here did not impair title to property of the estate. Although a debtor may retain some incidents of ownership after entry prepetition of a District of Columbia tax sale judgment (for example, a limited right of possession), the delivery of the deed does not impair any of the debtor's rights as the debtor's previous full ownership of the property had been converted by the judgment to a right of enjoyment subject to divestment by way of the purchaser's exercising its rights under its purchase commitment.

*In re Foskey*, 417 B.R. at 843. In other words, neither Plus Properties nor the District took any action that was incompatible or otherwise interfered with Foskey's (and the estate's) extremely limited interest in the property.

This reasoning accords with the decisions by the Second Circuit and other courts that postpetition acts taken with respect to property for which the debtor's right of redemption has been foreclosed prepetition do not violate the automatic stay. For example, *In re Rodgers*, 333 F.3d 64

(2d Cir. 2003) (per curiam), the Second Circuit concluded that the delivery and recording postpetition of a deed to the debtor's property, which had been sold in a prepetition tax foreclosure sale, was not in violation of the automatic stay. *Id.* at 65-66. Under New York state law, a debtor's right of redemption is terminated by a valid foreclosure sale. *Id.* at 67-68. Accordingly, once the property was sold via a valid tax sale prepetition, the debtor's right of redemption was extinguished whether or not a deed had been delivered to the purchaser and the property of the estate consisted only of a bare legal title to the subject property. *Id.* at 67, 69. The Second Circuit therefore concluded that the postpetition deliverance of the deed to the purchaser did not affect the property of the estate and was not in violation of the automatic stay. *Id. Cf. In re Martin*, 276 B.R. 552, 554, 557 (Bank. N.D. Miss. 2001) (finding that debtor "possessed no legal or equitable interest" in property that had been sold via a prepetition foreclosure sale, notwithstanding that the deed had not yet been recorded); *In re Watts*, 273 B.R. 471, 474 (Bankr. D.S.C. 2000) (concluding that "property sold at a pre-petition foreclosure sale could not be deemed to constitute property of the estate"); *In re Morgan*, 115 B.R. 399, 401-02 (Bankr. M.D. Ga. 1990) (finding that property sold at a foreclosure sale prepetition is not property of the estate even if the foreclosure deed is not executed until after the bankruptcy petition is filed); *but see In re Samaniego*, 224 B.R. 154, 163 (Bankr. E.D. Wash. 1998) (finding that "[b]are legal title constitutes property of the estate," and that "[d]elivery and recording of the [] deeds are clearly acts to obtain possession of that bare legal title from the estate" in violation of the automatic stay provision).

The Court recognizes that the decisions cited above are each premised on the finding that the debtor has no legal or equitable interest in the property, such that the property at issue is deemed to be outside the property of the estate under 11 U.S.C. § 541(a)(1). By contrast, the

Bankruptcy Court below declined to find that the debtor had *no* legal interest in the property (i.e., that the property was not a part of the estate), but rather concluded that the debtor's legal interest was limited in such a way that the postpetition actions — which were taken consistent with those limitations — did not violate the automatic stay. Ultimately, the Court finds that this is a distinction without meaning under the present circumstances. Key to each of these decisions is the fact that the debtor's right of redemption has been finally extinguished prior to the filing of bankruptcy. Consequently, at the time the petition for bankruptcy is filed, the purchaser's interest in the property can no longer be defeated by the debtor and any interest the debtor has in the property is limited to bare legal title only, which interest is subject to divestment by the completion of the tax sale contract and the execution, delivery, and recording of the deed. Under such circumstances, actions taken postpetition to complete payment and record the deed pursuant to the prepetition tax sale are wholly consistent with what limited interest, if any, the debtor has in the property at the time of bankruptcy and therefore are not actions taken against the property of the estate in violation of the automatic stay.

Foskey himself does not dispute that his interests in the subject property were so limited at the time he filed his bankruptcy petition; while he generally states that he "had title to the property at the time of his filing bankruptcy," Appellant's Br. at 9, he does not challenge the Bankruptcy Court's finding that this title was subject to divestment upon Plus Properties' payment of the purchase price and the District's issuance of the deed. *See generally id.* Rather, Foskey argues that the mere fact that he had bare legal title to the property was sufficient to establish that the property was property of the estate and that any actions taken by Appellees with respect to the deed were therefore in violation of the automatic stay. *Id.* at 9. As explained above, however, "[a]

debtor's property rights do not expand upon the commencement of a [bankruptcy petition]." *In re Alpine PCS, Inc.*, No. 08-00543, 2008 WL 5076983, *4 (Bankr. D.D.C. Oct. 10, 2008) (citing *Moody*, 734 F.2d at 1213). Foskey's — and therefore, the estate's — property rights consisted solely of bare legal title subject to divestment upon payment by Plus Properties and issuance of a deed by the District. Accordingly, while actions taken against that limited interest may have violated the automatic stay, the postpetition actions at issue here were taken consistent with the estate's limited property rights and were not in violation of the automatic stay provisions.[6]

### 2. The D.C. Superior Court's Judgment Was Not Conditional

Foskey next argues that, even assuming the Bankruptcy Court correctly found that postpetition delivery of a deed does not violate the automatic stay where the property was sold via a prepetition tax sale and the debtor's right to redemption had been finally foreclosed, the facts in this case demonstrate that Foskey's right of redemption has not in fact been finally foreclosed at the time of bankruptcy. Specifically, Foskey contends that: (a) the July 20, 2005 final judgment

---

[6] Foskey also cites to the decision *In re Flowers*, 94 B.R. 3 (Bankr. D.D.C. 1988), in which the Bankruptcy Court concluded that the postpetition issuance of a deed to property sold via a prepetition non-judicial foreclosure sale was barred by the automatic stay provisions. *See* Appellant's Br. at 8. It is unclear whether Foskey intended to rely on the substantive holding in this case as support for his present appeal or whether he simply intended to refer to the case in explaining the Bankruptcy Court's decision below. *See* Appellant's Br. at 8-9. Regardless, the Court finds that consideration of the cited decision does not affect its conclusion as stated herein. The decision is not, of course, binding on this Court. Although the Court may consider it to the extent its reasoning is compelling, the Court finds that the decision's persuasive force is limited under the instant circumstances, particularly given the factual differences between the two cases. Here, Plus Properties had obtained a prepetition final judgment extinguishing Foskey's "right, title, claim, lien, interest or equity of redemption in the Property," which decision was final and cannot be reopened absent claims of fraud or lack of jurisdiction; by contrast, no such final judgment had been rendered in *In re Flowers*. For this reason, among others, the decision in *In re Flowers*, "even if correctly decided, is distinguishable" from the case at hand. *In re Foskey*, 417 at 839-40.

and order's "finality and validity" was conditioned upon Plus Properties' "strict compliance with D.C. Code § 47-1382," Appellant's Br. at 9; (b) under that provision of the D.C. Code, Plus Properties was required to pay the District the amount owed within 30 days of the final judgment and record the deed within 30 days of it execution, *id.* at 11; (c) Plus Properties failed to comply with either requirement, *id.*; (d) therefore, by operation of D.C. Code § 47-1382(f), Plus Properties' deed to the subject property "was void *ab initio*" and Foskey's "full legal and equitable title to the property" was automatically restored prior to the filing of Foskey's bankruptcy petition, *id.* at 9, 11, 15. This argument, however, is predicated upon an inaccurate interpretation of the relevant statutory provisions. Accordingly, while it is undisputed that Plus Properties did not pay the District within 30 days of the final judgment nor did it record the deed within 30 days of its issuance, these facts by themselves do not automatically void either the validity of the final judgment or Plus Properties' interest in the property.

First, contrary to Foskey's present assertion, the July 20, 2005 final judgment and order foreclosing Foskey's right of redemption was *not* conditioned upon Plus Properties' and the District's compliance with D.C. Code § 47-1382. By its plain terms, the final judgment extinguished Foskey's "right, title, claim, lien, interest or equity of redemption in the Property." Docket No. [1-4] at 21; *see also id.* at 24 ("Final judgment is entered foreclosing the rights of redemption of all Defendants and all persons having or claiming to have any interest in the Property."). While the final judgment and order also "directed [the Mayor] to execute and deliver a deed to [Plus Properties] in accordance with D.C. Code § 47-1832," as required by section 47-1382(a), nothing in the final judgment and order suggests that the finality or validity of the order foreclosing Foskey's right of redemption was contingent upon either the Mayor's or Plus

20

Properties' post-judgment actions. *See generally* Docket No. [1-4] at 21-25.

Second, contrary to Foskey's present arguments, Plus Properties' failure to render payment to the District within 30 days of the final judgment and record the deed within 30 days of its execution does *not* automatically render Plus Properties' deed to the subject property "void *ab initio*" nor does it restore Foskey to "full legal and equitable title to the property."   As previously explained, D.C. Code § 47-1382(a) requires that "[a] final judgment foreclosing the right of redemption shall direct the Mayor to execute and deliver a deed to the purchaser in fee simple on payment to the Mayor of the amount required under this section."   Although D.C. Code § 47-1382(a) does not specify a particular time period within which these actions must be completed, D.C. Code. § 47-1382(f) provides:

> If the purchaser fails to pay to the Mayor the amount required under this section within 30 days of the final judgment, the final judgment may be vacated as void by the Superior Court on the motion of any party. If the purchaser does not record the deed in the Recorder of Deeds within 30 days of the execution of the deed, the final judgment may be vacated as void by the Superior Court on the motion of any party. If a final judgment is so vacated, the deed and the certificate of sale are void and all money paid by the purchaser to the Mayor is forfeited. . . .

*Id*.   Under the plain language of this statutory provision, if the purchaser fails to pay the District within 30 days of the final judgment or to record the deed within 30 days of its execution, the final judgment foreclosing the owner's right of redemption *may* be vacated on the motion of any party. The purchaser's failure to comply with the deadlines set forth therein does not automatically affect the final judgment, but instead simply permits any party to file a motion to vacate the final judgment, which the D.C. Superior Court may or may not grant in its discretion.   Until such motion is filed and granted, the final judgment foreclosing the owner's right of redemption remains final and effective.   Foskey's interpretation to the contrary does not comport with the plain

language of the statute nor has Foskey offered any case law or other legal authority to support his position that failure to either render payment or record the deed within the 30-day time periods provided for in section 47-1382(f) automatically voids the final judgment and restores the owner's right of redemption. *See generally* Appellant's Br. at 9-15.

The Court therefore concludes that the statute, properly interpreted, provides only that upon Plus Properties' admitted failure to render payment or record the deed within the 30-day time periods, Foskey gained the same right available to any other party under the statute — namely, the right to file a motion to vacate the final judgment with the Superior Court for the District of Columbia. As to this right, the Court notes that pursuant to the Bankruptcy Court's June 11, 2007 Order lifting the automatic stay to permit Foskey to pursue his rights in D.C. Superior Court, Foskey has filed a motion to vacate the final judgment on the basis that Plus Properties and the District failed to comply with the time limits set forth in D.C. Code § 47-1382(f). Appellant's Br. at 9. That motion has since been denied by order dated May 28, 2010. *See Plus Properties, LLC v. Foskey et al.,* 2003 CA 001869(RP). Accordingly, the D.C. Superior Court's July 20, 2005 Final Judgment and Order foreclosing Foskey's right of redemption remains in effect.

For the reasons set forth above, the Court affirms the Bankruptcy Court's October 16, 2009 Order and Memorandum Decision insofar as the Bankruptcy Court denied Foskey's motion to reconsider the Court's June 12, 2007 Order denying as moot Plus Properties' Motion for Relief from the Automatic Stay Provision Nunc Pro Tunc based on a finding that the automatic stay provision had not been violated.

B.     *The Bankruptcy Court Correctly Denied Foskey's Motion for Authority to Sell the Property Free and Clear of All Liens*

Foskey also appeals the Bankruptcy Court's decision to deny Foskey's Motion for Authority to Sell the Property Free and Clear of All Liens. However, as Foskey himself implicitly acknowledges in his Appellant's Brief, *see* Appellant's Br. at 18-19, the merits of this argument on appeal are inherently dependent upon the merits of Foskey's contention that Plus Properties' and the District's postpetition acts violated the automatic stay, thereby rendering Plus Properties' deed in the property void. Having affirmed the Bankruptcy Court's finding that the automatic stay was not violated, the Court upholds the execution and delivery of the deed by the District and the subsequent recordation of the deed by Plus Properties. Foskey therefore has no legal or equitable interest in the property. Accordingly, Court affirms the Bankruptcy Court's October 16, 2009 Order and Memorandum Decision insofar as the Bankruptcy Court denied Foskey's Motion for Authority to Sell the Property Free and Clear of All Liens.

C.     *Foskey Has Not Challenged The Bankruptcy Court's Alternative Holding That, In The Event The Automatic Stay Was Technically Violated, The Automatic Stay Should Be Annulled Nunc Pro Tunc To Permit The Recording Of The Deed*

Finally, the Court notes that, as set forth in its October 19, 2009 Memorandum Decision, the Bankruptcy Court rendered an oral opinion at the April 21, 2008 hearing "holding that even if delivery and recording of the tax-sale deed technically violated the automatic stay, the automatic stay would be annulled *nunc pro tunc* so as to permit the recording of that deed." *In re Foskey*, 417 B.R. at 838. While the Bankruptcy Court subsequently followed this oral holding with its written Memorandum Decision finding that the automatic stay had not in fact been violated, it nonetheless remains that the Bankruptcy Court held in the alternative that an annulment *nunc pro*

*tunc* of the automatic stay would be appropriate even if it a violation of the automatic stay had occurred in this case. Significantly, Foskey has *not* challenged that oral holding on appeal nor has he otherwise addressed the correctness of the Bankruptcy Court's holding on this point; he has instead focused solely on the Bankruptcy Court's written decision that there was no violation of the automatic stay in this case. *See generally* Appellant's Br. Accordingly, even assuming that the Court agreed that there was a violation of the automatic stay, Foskey has not shown that the Bankruptcy Court wrongly found that the stay should be annulled *nunc pro tunc* to permit Plus Properties to record the deed to the property at issue. Under such a holding, Plus Properties' deed to the property would be valid despite any technical violations of the automatic stay, and Foskey would remain without any legal or equitable interest in the property. The result is therefore the same — Foskey's request for permission to sell the property free and clear of any liens must be denied.

## III. CONCLUSION

For the reasons set forth above, the Court shall AFFIRM the Bankruptcy Court's October 19, 2009 Order finding that Plus Properties' and the District's postpetition acts did not violate the automatic stay provision; denying Foskey's Motion for Authority to Sell the Property Free and Clear of Liens; and affirming the Bankruptcy Court's June 12, 2007 order denying as moot Plus Properties' Motion for Relief from the Automatic Stay Nunc Pro Tunc.

Date: September 29, 2010

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge

24